3-20-0310, the people of the state of Illinois, Appalee v. Maurice C. Lumpkins, Appellant. Mr. Castaneda, if you're ready, you may proceed. Thank you, Your Honor. Good afternoon, Your Honors, and good afternoon to counsel. May it please the Court. My name is Eric Castaneda. I'm with the Office of the State Appellate Defender on behalf of Mr. Maurice Lumpkins. Your Honors, we are here today to ask that you vacate outright Mr. Lumpkins' convictions or, in the alternative, that you reverse his convictions and remand this matter for a new trial. Follow him. This is a case where a 3-14 second ambiguous interaction between my client and a confidential informant improperly resulted in not only a warrant being issued without probable cause, but also into several drug convictions with no evidence that my client was engaged in any illegal drug sales. This ambiguous interaction between my client and the confidential source also violated Mr. Lumpkins' Sixth Amendment right to confront the witnesses against him, as the confidential source cannot be located and did not testify at trial, and my client did not have the opportunity to cross-examine the confidential source. As to the first issue, the trial court erred in denying the motion to quash the warrant and from the March 21, 2018 search. Mr. Castaneda, can you tell me when exactly it was the trial court erred in denying the motion? So the trial court actually made a ruling on denying the motion when the trial had commenced. It revisited the motion and realized that it had not ruled on it and expressly stated, denied it. I've denied that motion. It again denied the motion when counsel filed a post-trial motion in which it was litigated again. There was a hearing on the motion and the trial court again denied that motion. So the trial court twice denied the motion. There are two separate and distinct properties under the General 3593 South Main Street address. The two properties are distinguished by their two distinct PIN numbers. One PIN ends with 008, and that is the residence, the property where my client's residence was, and the other property ends in 009. The drug transaction that occurred between the confidential source and Germaldi Gaines on March 2, 2018 occurred entirely in the 009 property. I just want to interrupt you, and I want to make sure. I've never seen a search warrant, and I've seen a lot of search warrants using the PIN number of a property. I mean, there's a street address, there's descriptions of all the different pieces of property that, you know, the trailer, the mobile home, the residence to be searched. I mean, you're not, I mean, there's nothing inherently problematic about not including a PIN number in the search warrant. That would be a fair statement, correct? Correct. All right, so continue. I just wanted to double check that because to me, all right, continue. And I'm going to follow up on your question. Weren't the PIN numbers in the search warrant, were they not? Yes, they were. In this search warrant, they were. It's the first, it's just the first time I've ever seen them. Sure. I was, just want to make sure there wasn't some case law I was unaware of. All right, continue. Yes, no, and then to your honor's concerns, normally if, you know, apply for a search warrant, if it was one property, you just have the one property address. So here, the way the search warrant was sought out in the way the search warrant was issued, it was issued for two separate properties. The search warrant was acquired for two separate properties, the 008 property and the 009 property. And in People versus Rojas, there was a search warrant for a residence that was squashed and the evidence suppressed because there was no nexus established between the illegal activity and the defendant's residence. And while the affidavit for that warrant was detailed about the drug operation and it explained that the defendant had asked others who were involved in the drug trafficking scheme to meet him at that residence, the court found that the affidavit was bare bones as applied to the defendant and his residence because there was no illegal activity connected to that residence. Similarly here, while there was a drug transaction clearly at the 009 property, the affidavit authored by Detective Aramovich was bare bones as to Mr. Lumpkins' residence, the 008 property. The only activity linked to Mr. Lumpkins is that he declined to speak with the confidential source. And this is depicted in the video exhibit that was submitted by the state, where he tells the confidential source, follow him or holler at him. And this interaction between Mr. Lumpkins and the confidential source was less than 14 seconds, if that. The entirety of the video amounts to about 20 minutes and Mr. Lumpkins' interaction with the confidential source is less than 14 seconds. This is not enough to tie any illegal activity to any drug sales to the 008 property or Mr. Lumpkins. The affidavit authored by Aramovich states that it was Gaines who sold the confidential source to drugs. The video shows that as soon as the confidential informant to drive to the trailer to the 009 property, he instructed the confidential source, let's go to where we did it last time. And I quote, last time. And the drug transaction occurred at the 009 property with no involvement from Mr. Lumpkins. The affidavit also stated that when the confidential source attempted to buy drugs again on March 9th, about a week later at the 008 property, he was told that they did not sell drugs there. And again, the confidential source went to the 009 property. So this affidavit was bare bones as to Mr. Lumpkins and the 008 property. And as in Rojas, the trial court should have granted Mr. Lumpkins' motion to quash the search warrant and should have suppressed the evidence that resulted from the execution of that warrant on March 21st. And the remaining information provided in the affidavit was stale. Aramovich included information that in 2016, more than two years prior to the application of this warrant, a search was conducted on the 008 property where police recovered narcotics and other drug paraphernalia from this residence. But as is stated in the affidavit, however, Mr. Lumpkins was already being prosecuted for this illegal contraband that resulted from that search. And there was no evidence that Mr. Lumpkins was engaged in any continuous course of criminal conduct since this 2006 incident. The cases relied on by the state, Beck, Hernandez, and Sellers, those cases are distinguishable because in those cases, there was several witnesses who specifically testified to this continuing course of criminal conduct, who specifically testified that the defendants there were selling drugs throughout the course of the timeframe, whether that be a year, a few months. One of the defendant's nephews frequented the defendant's house and testified that he was engaged in illegal activity throughout the course of, I believe in that case, it was a year. Here, there's nothing, there's no testimony, no witnesses saying Mr. Lumpkins continuously sold drugs since 2016. The only evidence here is just conjecture based on him declining to speak with this confidential source. And this is not enough to show a continuing course of conduct. So the warrant here was issued without probable cause and the search of the 008 property was illegal. And all the evidence obtained from this search on March 21st should be suppressed and Mr. Lumpkins' convictions reversed outright. Moving on to the second issue, the state failed to prove Mr. Lumpkins guilty of any of the drug charges, failed to prove him beyond a reasonable doubt. To start with count five, Mr. Lumpkins was convicted for that March 2nd drug transaction between Gaines and the confidential source. And again, the only evidence is that my client declined to speak with the confidential source. In People versus Rappo, there, there was an undercover agent who met with a dealer and the agent was told by the dealer that his was in a nearby parking lot. When they went to the parking lot, the defendant was in a car, he was observed speaking with the dealer for 10 minutes. He then handed an object to the dealer. When the dealer again met with the undercover agent, he told him that he had an ounce of good Coke and handed that agent a clear bag containing white powder. There were no fingerprints obtained from the bag and the court in Rappo found that there was insufficient evidence to show that the defendant aided and abetted the dealer in the sale of drugs. Here we have much less involvement from Mr. Lumpkins. Again, Mr. Lumpkins simply declined to speak with the confidential source. There was no interaction between Lumpkins and Gaines and Gaines was in control of the entire buy. As he instructed the confidential source where to drive, he negotiated the price with the confidential source and he actually sold the drugs to the There was also no fingerprint evidence presented here and my client specifically told police that he was willing to submit to fingerprint testing. Here the state failed to prove any involvement by Mr. Lumpkins in that March 2 transaction between Gaines and the confidential source. Now as to the drugs recovered from inside the silver Monte Carlo and the trailblazer, now to begin, I'd like to point out that the state misstates or misinterprets the evidence from the trial because Mr. Lumpkins never attempted to flee the police. There was no evidence that Mr. Lumpkins did not cooperate with police or that he attempted in any way to flee. There was no connecting Mr. Lumpkins with the Monte Carlo. There was no evidence who the cars were registered to, no who owned the cars. Mr. Lumpkins testified that he did not own any of the Monte Carlo nor the trailblazer. Detective Aramovich admitted that he did not know who owned the cars or who the cars belonged to. The drugs found inside the Monte Carlo were shoved as the officer who testified who recovered the drugs stated they were shoved way back inside the glove compartment of the Monte Carlo. And while Mr. Lumpkins was found driving the trailblazer, there was no evidence to show that he had any knowledge or constructive possession of the drugs that were found in the trunk of that trailblazer. The cases relied on by Mr. Lumpkins in Horn and Drake and there in the Horn defendant was found that he drove the car three hours prior to the car being pulled over by the police. He was the passenger in that vehicle at the time that the stop was initiated and the courts found that the drugs found in the trunk of that car, there was no probable cause to arrest the defendant based on those drugs. Here we have less evidence connecting Mr. Lumpkins to the drugs found in the trailblazer. Does the fact that the defendant has drugs on his person when he searched inform the question whether circumstantially he may have known of other drugs located in the car he was driving, the trailblazer? I think that it's hard to ignore that fact, but I will point out that my client, the drugs that were found on Mr. Lumpkins, he admitted that he suffered from crack addiction. The drugs that were found in Mr. Lumpkins were cocaine, crack cocaine, as opposed to the rest of the drugs that are at issue here, which is heroin. The drugs sold on March 2nd were heroin. The drugs found in the Monte Carlo were heroin. The drugs found in the back of the trailblazer were heroin. Did he have Suboxone on his person? Yes. And this is not a rhetorical question, but it's my understanding Suboxone doesn't relate to crack or cocaine. It relates to heroin, which was in the back of the trailblazer. Correct, your honor. And to my understanding, Suboxone can also be used when someone is trying to recover from drugs. So while Mr. Lumpkins did say he suffered from crack addiction, I would say that the Suboxone does not show that he had any knowledge of the heroin that was hidden in the back of the trailblazer in the trunk of a car. If I may interrupt on the discussion that you were just on, is there any evidence that in the record what Justice Brennan asked you about, other than the fact that he possessed it, was there testimony regarding its use or other uses that conversation you just had? Yes. When Mr. Lumpkins was interviewed by police officers after he was arrested on March 21st, and based on that interview, the police officer who interviewed him testified that Mr. Lumpkins had a crack addiction problem. There's also a video that's part of the record of that interview. I did see that in the record, the Suboxone that you talked about. Was there any Okay. And then secondly, you referred to the trunk a couple times, referring to another case and this trailblazer, does it have a trunk? The officer who recovered the drugs described it as the trunk of a trailblazer. There was certainly no testimony that it was visible. There was no testimony that Mr. Lumpkins made any movements, that he had knowledge that there was drugs in the trailblazer, which is distinguishable from the cases relied on by the state, McLaurin and McNeely, where there the police officers specifically testified that they saw the defendants make movements to show that they attempted to hide the drugs, whether that was in the car, under the seat, or on the siding from the house, on the side of the house. Again, here, police testified they had a clear view of my clients, and they did not testify that they had seen him make any movements to show that he had knowledge of the drugs that were, however you want to describe it, in the back of the trailblazer. And so for those reasons, I think it's very distinguishable from the cases presented by the state. My client, again, did not attempt to flee. My client did not So when we take into consideration all these circumstances, there was no evidence that my client had any knowledge that there were drugs inside that trailblazer. As to count four, the final count, we just stand on the arguments in the brief that the 3.6 grams was not shown, that they were not for personal use. And again, I'll highlight that this was crack cocaine that was found on my client, as opposed to the heroin that is the Now as to my, your honors, I see that my time is up. All right, any other questions from Justice Hedl or Justice Peterson? Not me. No. Mr. Castaneda, you have an opportunity for rebuttal. Mr. Trejo. May I please accord, counsel, Adam Trejo on behalf of the people of the state of Illinois. Defendant on appeal brings three distinct arguments, and I'm going to, in his argument, he kind of mixes them together, and I'm going to separate them and address first the motion to suppress evidence. And in this case, a lot of the arguments that the defendant raises in his brief have been forfeited, and there really is no motion to suppress for this court to review. The state acknowledges that defense counsel did file a motion to suppress evidence pursuant to Section 5-114-12A1. That section applies when a search happens without a search warrant. And here there was. When you look at the crux of the motion to suppress, nothing is really alleged other than 1940s or decades old case law. And when the state filed its motion replying to defendant's motion to suppress, it noted there's really, there's, they don't, the state didn't understand what defendant was raising. So at the hearing on the motion to suppress, the defense counsel brought the defendant to testify, and in the middle of it, the trial court asked, what exactly are you arguing? What are the bases that you're attacking the search warrant? And defense counsel was given the opportunity after a short exchange to file an amended motion to suppress to clarify exactly what you're arguing. That never happened. Now, the state acknowledges that at trial, there was confusion on behalf of the court whether it had issued a ruling, and it was mistaken that it did, but it never did. It simply allowed defense counsel to file an amended motion. And because defense counsel never filed that amended motion, he procedurally defaulted all of these arguments. There is no motion for this court to review. The court never made findings of fact, and it prevented the state from raising good faith arguments because defense counsel never proceeded on this motion. And on appeal, opposing counsel doesn't argue an effective assistance of counsel. But even assuming this court reviews that initial first motion, it's pretty bare. These new arguments on appeal are not apparent within that motion. Specifically, the staleness argument was not included within the original motion, nor in the post-trial motion, in which defense counsel argued that the court was wrong in denying his first motion, which is incorrect. It was not denied. He was to file an amended motion, which never happened. So I'm confused as to how this court is reviewing a motion that's not within the record. And the one that is, is very insufficient and bare, as it doesn't even include the staleness argument, neither in his post-trial motion. So there's multiple, multiple levels of forfeiture. Mr. Trejo, a quick question. Yes. I, if I'm not mistaken, but didn't the judge just, I probably need to clean things up when he realized he hadn't made any rulings, said, well, I'm denying the motion. He did say those words during the trial, albeit late. It was awkward. I get the confusion and it did probably result because defense counsel never filed an amended motion, but he did say the words, I'm denying the motion. Right. But there was basically no hearing. And assuming this court agrees that it was denied, there's no, it's pretty clear that that motion is inadequate. It's pretty clear that the basis that a defendant argues in his brief, they're not in that motion. So the state will acknowledge the court made that statement. That still does not fix the inadequacies within that on opposing counsel's raising such as the staleness argument. They're not there. Forfeiture aside, there was probable cause for the issuance of this warrant. Of course, probable cause, you don't need proof beyond a reasonable doubt of criminal activity, only a sufficient probability that criminal activity is occurring. And the search warrant wasn't necessarily against a specific person specifically against the defendant. It was for these properties that the officer alleged illegal criminal activity was occurring. Other than the 2016 incident where the defendant's house was searched, which just assume for the sake of argument that that is stale. But other than that, is there anything else in the complaint or affidavit that would focus law enforcement's attention on the defendant's house? Yes. Remember, there's two controlled purchases of drugs. The first one happened on March 2nd and March 9th. And the March 2nd was the one who was ultimately found guilty of under an accountability theory. And in the search warrant, the officer described the events. The confidential source stated that he knew the defendant as Remo and knew that he could buy drugs. Again, information in a search warrant is not a trial and it's not proof beyond a reasonable doubt that illegal activity is confidential source saying, I know this defendant who sells drugs. This is where I can... Is there anything to say that, I mean, the confidential informant didn't say he ever purchased drugs at the house. Did he? No, but that's where the control purchase comes into play. He goes to the house and in the driveway, we have the defendant on one side of the trailblazer, we have Gaines on the other side, and we have another individual. The confidential source goes up to the defendant asking to buy drugs for heroin. And that's alleged in the search warrant. This is actual information. He went and asked to buy drugs. And in the search warrant, it states that defendant directed him to Gaines, which the trial court made the inference is that they're information that from 2016, the defendant was selling drugs because he admitted to it. There was information from the 2016 search that yes, my house got raided. There was drugs in the defendant's room where the defendant was staying at. The defendant was also interviewed after the 2016 search and said, I sell drugs, no one else. And it's the state's position that it's not stale because it showed a continuous course of criminal activity throughout the years. But we have information within the search warrant where the confidential source is saying, I went to the defendant to buy drugs at this property. He directed me to another person and I bought drugs on an adjacent property. Does the search warrant anywhere identify the make, model, or any specifics as it relates to any vehicles? Again, this is just on my memory. It's a very detailed search warrant. There's a lot of information. If I'm just recalling from my memory, it just says all the vehicles on the house. But an appeal defendant is not arguing that the search warrant was insufficient for the vehicles. He's arguing it's insufficient for the properties. I reread the defendant's brief and it doesn't make an allegation that there's no probable cause for the vehicles, just the property. And I'd like to point out that the evidence adduced to trial, none of the drugs for which the defendant was found guilty were found within the property. They were found either in two vehicles or on the defendant's or in the defendant's truck. Now, defendant did make, I'm going to move on to the second argument, the sufficiency of the evidence argument. Of course, the state relies on its brief in regards to the first issue and relies on that for why it was sufficient. But in this case, defendant did testify. He was interviewed. And he said that that White House was his. And he also said that the trailblazer was his in the interview. I'd also like to emphasize that the trial court made findings of fact in this case. The trial court found the defendant's testimony, which was self-serving to be incredible at trial, and also found that the defendant was in the drug dealing business. It was an operation in which he was the head individual. So these are the findings of fact. We have a judge who made them, who was the trial fact in this case. I'm going to go by the order in which the state, there's four different counts. And in regards to the first count, which defendant argues the evidence was insufficient, he doesn't argue possession. He concedes that possession was proven. Because when the police arrived, the defendant was coming out of the driveway in his vehicle. And the state argues that there was a proper inference that he was fleeing. You know why? Because he had cameras mounted on every corner of his house, which produced a live feed inside his house that he said was his in the interview with the police. So that's why the state argued there was an inference he was fleeing. Or there was an inference that he was in the process of selling those drugs that were on his person. And in the trailblazer, which he said in the interview with the police was his. So when the police arrived, they stopped him from leaving the house. And they search him. And defendant argues that the state did improve the intent to deliver element, not the possession element. Now there's case law that the state cites that says when only a small amount of drugs is found, in order to establish intent, the minimum evidence this court needs to affirm is that the drugs were packaged for sale. And at least one additional factor, tending to show intent, is shown. And here, the defendant had on his person a cell phone. Also, was this evidence testified to? Or I realize we look at the case law and, pardon me, and, you know, look back at things that have been accepted in front of other cases as being indicative of drug sales. Was it testified to? The case law or what was found on the defendant's person? The evidence in this case. Did someone testify? Yes, yes. The officer testified the defendant had a cell phone, two bags of cocaine, cash in the amount of $824, and three packets of the opioid inhibitor. That was testified to. So, and the forensic examiner testified that the first bag contained 2.3 grams of cocaine in the form of a rock-like substance. The second bag, 19 individually packaged clear plastic bags were found. There's an inference that the first bag was the source where the defendant took the drugs and appropriated them within the 19 individually packaged bags. There's also an inference that the defendant was a recovering addict, therefore taking the opioid inhibitor. But yes, intent to distribute was shown. We had the cell phone, which is a factor to indetermining, the two bags of cocaine, the way it's packaged, the money, and the cell phone. Furthermore, he was found inside a trailblazer, which he said was his, and inside the trunk of the trailblazer was heroin, which was the basis for count two. So we have the defendant admitting that it was his vehicle in an interview. Was there not always, was there not, in addition to the heroin, a digital scale in a box of plastic bags in the trailblazer that he was in? Yes, in the backseat. It might be, I think it was a passenger backseat. I'm not 100% certain, but there was a box of sandwich bags and a black found, accepted the state's theory that when the police arrived, the defendant threw the heroin in the backseat of the trailblazer. Now that's a specific finding by the trier fact in this case, and on the record. So the state approved possession, constructive possession, because he controlled it because of court found that he threw it in the backseat. The fact that you had it and could throw it in the back shows that you controlled it. Um, and the items found in the backseat proved that he intended to distribute it. He had the scale. Uh, he had, um, the bags. He was in a vehicle known to transfer, uh, to transfer objects and he had drugs on his person. Uh, can I, can I ask you, how about, can we switch to the drugs in Monte Carlo? Because you're running out of time and I'm interested in that. Absolutely. I think what's, I think this case, this, it relies a lot on circumstantial evidence. And if it was just drug, these drugs found in this car, it would be troublesome. But here we need to, uh, we need to take everything into account. Uh, the court found this with a drug dealing operation. When the controlled purchase happened, the confidential source didn't go to gains, two people, the confidential source went directly to the defendant. And now on the recording, it's mumbled what, what But who did he go to first? The defendant and it's a state's position. He directed him to his associate. The defendant also had cameras on every corner and all this evidence together, the fact that he's, uh, operating a business showed that he's monitoring, uh, these drugs. He's the head honcho. He he's the boss. He's in his house. Uh, and there's cameras on the property. He knows who's coming, who's going, what's selling, who's accessing the vehicles. He already admitted the trailblazer was his. Uh, so this is a case very much on circumstantial evidence. And, um, the state relies on every point it's raised in its brief and the people of the state of Illinois respectfully request that this honorable court from defendants convictions. Thank you. Thank you. Thank you, sir. Castaneda, do you wish to rebuttal? Uh, yes, your honor, uh, points on rebuttal. Um, here, the, the court clearly denied the motion, the record on pages three 89 and eight 20, the court says denied the motion. Uh, council sufficiently, uh, challenges the probable cause as to the zero zero eight property as is evidenced by his motions. He cites Illinois versus gates and his post-trial motion. He cites the Ibarra case, uh, establishing that there is no probable cause a warrant should not be issued. Um, the state had sufficient time to respond to the motion. Um, counsel for the first time on appeal argues that they couldn't have argued good faith. Uh, so I'll point this court to the recent decision in Solomon by the Illinois Supreme court, where similar arguments were made. And the court said that because the record was sufficient, uh, that the state was not prevented from raising such arguments at trial. And that is the case here. Um, but challenge to probable cause was made. Uh, the affidavit is part of the record. Um, the warrant was part of the record. Motions were filed. There was, uh, uh, evidentiary hearing on the motion of quash. Uh, there was a post trial hearing on the motion of quash that was raised again. So the state had plenty of time to, uh, an opportunity to raise a good faith argument, which we challenged under Ibarra is that good faith cannot be raised when the affidavit is bare bones as to a property. Um, the, the, the case relied on by the state and Jane's, um, in that case, uh, the court actually did, uh, address the issue of staleness. Uh, even though the issue had not raised, uh, been raised We asked that that issue be, be entertained under the plain error doctrine. Um, and we, we clearly challenged the, the, the, the probable cause as to the vehicles. We challenged the warrant, the entirety of the warrant as it not having any probable cause to having been issued. Uh, and in the warrant itself, it states, and I quote that the vehicles that are part of that property, um, shall be searched. And so we do challenge the probable cause as to the vehicles. Um, I believe council misstates a lot of the evidence from the trial as there's no evidence that my client ever admitted to owning the trailblazer. Uh, I'm not sure where that is in the record. Um, and the final contention that I'll make is that, you know, council agrees that the confidential source and I quote was asking to buy heroin from my client. And that that's the final issue that we were raising here is that this is a violation of the confrontation clause. Um, because this ambiguous, um, statement one detective Aramovich stated that this confidential source was not reliable. I quote, he said that this confidential source was not reliable and that's why they couldn't locate him. Um, he couldn't hear what the confidential source was saying in the video. Uh, the video is part of the record and your admissible under the silent witness doctrine, which we contest. It wasn't, uh, it doesn't trump the confrontation clause. And Perkins tells us this much. Perkins tells us that the confrontation clause trumps any rule of admissibility. Um, the state does not address Perkins in its brief. It conflicts the two issues. And for, for these reasons, we asked this court to find, uh, to reverse Mr. Mr. Lumpkins, his convictions outright, or in the alternative that, uh, you reverse his convictions and remand this matter for new trial. Uh, if your honors have no further questions, thank you. Uh, justice Peterson or justice settle. No questions for me. We thank both sides for your arguments. Uh, the matter will be taken under advisement and a decision will be rendered in due course.